UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTIAN ROSE MARIE BRADY,

                  Plaintiff,

v.                                                             CASE # 18-cv-01340

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>MARY ELLEN GILL, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JOHN THOMAS<br>MOLINARO, ESQ.<br>JUNE LEE BYUN, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **GRANTED**, Defendant's motion is **DENIED,** the decision of the Commissioner be

**REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this order.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on January 2, 1980 and has a high school education. (Tr. 25, 206). Generally, Plaintiff's alleged disability consists of multiple sclerosis, obesity, bilateral leg pain, venous insufficiency, protein s deficiency, lesions on spine and brain, left arm weakness, hand pain, and urinary incontinence. (Tr. 410). Her alleged disability onset date is August 24, 2013. (Tr. 206). She previously worked as a sterilizer and medical assistant. (Tr. 25).

   B.   **Procedural History**

On March 6, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 177-185). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 22, 2017 Plaintiff appeared before the ALJ, John Allen. (Tr. 33-71). On October 5, 2017, ALJ Allen issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 12-32). On September 28, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since August 24, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq).*

3. The claimant has the following severe impairments: multiple sclerosis; asthma (20 CF'R 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CF'R Part 404, Subpart P, Appendix 1 (20 CF'R 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR 83-10, except the claimant should avoid concentrated exposure to gases, fumes, dust and other environmental pollutants. She is further precluded from work at unprotected heights or around hazardous machinery. She may not climb ladders, ropes or scaffolds. Finally, she must be allowed to change position briefly every 45-60 minutes (for 5-10 minutes), but could continue to remain focused on a task while doing so.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 2, 1980 and was 33 years old, which is defined as younger individual age 18-49, on the alleged disability onset date (20 CPR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CPR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CPR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2013, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-27).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in giving no significant weight to any of the medical opinion evidence and instead arrived at an RFC based on his own law interpretation of the raw medical data. (Dkt. No. 10 at 1 [Pl.'s Mem. of Law]). Second, the ALJ did not properly apply the treating physician rule to Dr. Karamanoukian's opinion. (Dkt. No. 10 at 1).

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 12 at 6 [Def.'s Mem. of Law]). Second, the ALJ properly evaluated the medical evidence of record. (Dkt. No. 12 at 10).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medical Opinion Evidence

Plaintiff's arguments generally apply to the ALJ's treatment of the opinion evidence from treating sources. Plaintiff contends that the RFC is flawed because the ALJ erred in evaluating the opinions of record, particularly the treating phlebologist specialist Hratch Karamanoukian, M.D. (Dkt. No. 10 at 17).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30). However, "[w]here

6

an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).

The record before the Court has two opinions from the same treating source.[1] On March 17, 2015, treating vascular specialist Dr. Karamanoukian completed a functional capacity statement. (Tr. 717). Dr. Karamanoukian opined that, from the standpoint of his vascular specialty, plaintiff could occasionally (defined as up to 1/3 of a work day) lift and carry; stand and/or walk up to six hours per eight-hour workday; and sit for less than six hours per eight-hour workday. (Tr. 719). Dr. Karamanoukian checked a box stating that he "cannot provide a medical opinion regarding this individual's ability to do work-related activities." (Tr. 719). On January 21, 2015, Dr. Karamanoukian stated plaintiff was disabled due to her multiple sclerosis and that it has impacted her ability to exercise and maintain the health of her legs. (Tr. 1151). He further stated her daily routine, activities of daily living, and quality of life have been affected. (Tr. 1152). Dr. Karamanoukian concluded that he prescribed Xarelto for 21 days, encouraged warm compresses and elevation of legs when seated, and prescribed medical grade compression stocking in an attempt at conservative therapy for her lower extremity venous disease. (Tr. 1154).

Initially, the ALJ stated he gave "minimal weight" to Dr. Karamanoukian's March 2015 opinion, but two sentences later he gave the opinion "no weight." His rationale was also equally conflicting. In support of his decision to discredit the entire form and opined limitations, the ALJ referred to the checked box stating a medical opinion regarding the plaintiff's ability to do work-

---

[1] The ALJ did not consider these events in chronological order in his decision. For the ease of the Court, the opinions will be addressed in the that same order.

7

related activities could not be provided. (Tr. 25). However, he then noted that Dr. Karamanoukian was a specialist and it was "understandable" that he would limit his opinion to the systems of his specialty, while reserving overall ability to function, to the other physicians. (Tr. 25). The ALJ also gave no weight to the January 2015 statements of disability, stating it was a determination reserved to the Commissioner. (Tr. 25). The RFC for light work, with no limitations in lifting or carrying, did not reflect any of Dr. Karamanoukian's opined limitations.

Looking to the March 2015 opinion, defendant simply argues the ALJ properly declined to accept the opinion because of the internal inconsistencies and because he provided "a seemingly incomplete opinion." (Dkt. No. 12 at 11). However, the opined limitations were not inconsistent within the form and Dr. Karamanoukian wrote a great deal on the form clarifying he was only commenting on limitations related to venous disease. (Tr. 717). He stated that the worked-related physical activity limitations were from his specialty only and other treating doctors needed to be consulted. (Tr. 717). Even though the ALJ specifically noted that the opinion was limited to what Dr. Karamanoukian was treating the plaintiff for, he appears to have thrown out the entire opinion because he did not have an opinion on other areas that were beyond his specialty. However, Dr. Karamanoukian was very thorough and careful to stay within his specialty and treatment of plaintiff.

Dr. Karamanoukian's January 2015 letter did have a conclusory statement regarding disability that is reserved to the Commissioner. However it had additional limitations that were selectively read by the ALJ. Administrative law judges are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen*, 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue*, 647 F.3d 734,

740 (7th Cir.2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004). The ALJ stated "the claimant sometimes needs to elevate her legs for comfort while sitting" but the 2015 letter states this limitation was not just for comfort but leg elevation when sitting was recommended as part of her treatment. (Tr. 1155). The ALJ went so far as to state other measures could be taken "to mitigate the changes of developing venous problems" in the lower extremities, instead of the recommended elevation of her legs, by wearing compression stockings, walking regularly, avoiding weight gain and exercising. (Tr. 25). Although those measures were noted in the January 2015 letter, the ALJ did not mention the narrative at the beginning when Dr. Karamanoukian stated that the multiple sclerosis impacted her ability to exercise and maintain the health of her legs. (Tr. 1151).

Although an ALJ is not required to explicitly go through each and every factor of the Regulation when evaluating a treating source opinion, the ALJ's reasoning and adherence to the Regulations must be clear. *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). In this case, the mere mentioning of the treating source's specialty does not satisfy the Regulations, particularly when it is noted throughout the form that the limitations were related only to the specialty. Despite Dr. Karamanoukian's carefully detailed opinion as a treating phlebologist, the ALJ afforded it no weight other than a referral mention. Further, there was no discussion of the medical evidence supporting the opinion or consistency of the opinion with the remaining medical evidence, only the allegedly inconsistent check-box, which the ALJ expressly stated was understandable given the scope of the specialty. Case law cited by defendant did not address internal consistencies on a form but rather with testimony and other medical evidence of record.

(Dkt. No. 12 at 11). The ALJ discusses no evidence that is contrary to the opinion but rather notes that the neurologist regularly found signs of left side weakness, particularly in the left lower extremity and spasticity of the bilateral arms. (Tr. 24).

The ALJ was insufficiently explicit in articulating his rationale for giving no weight to the treating source opinion. The ALJ is required to provide "good reasons," grounded in the factors set forth in the Regulations, for rejecting a treating physician's opinion. *See Jablonowski v. Colvin*, 2017 WL 2491488, *4 (W.D.N.Y. June 9, 2017) (citing *Smith v. Colvin*, 2013 WL 6504789, *11 (E.D.N.Y. Dec. 11, 2013) (noting that the district court must consider "whether the ALJ provided "good reasons" for discounting [a treating physician's] opinions *based on the factors set forth in the regulations*") (emphasis supplied in Jablonowski)). The single reason given to did not constitute a "good reason" for discarding the entire opinion. Dr. Karamanoukian provided more narrative and detail on the form than just check-boxes and under the regulatory factors could be entitled to more weight. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ's error was not a harmless error as the opined limitations were not included in the RFC. Remand is appropriate for the treating source statements to be properly considered under the Regulations. *See Jackson v. Colvin*, 2016 WL 1578748, *6 (W.D.N.Y. Apr. 20, 2016) ("[T]he ALJ failed to apply any of the other factors [besides consistency] in determining what weight to accord Dr. Dao's three opinions, all of which were required to be analyzed according to the treating physician rule. Moreover, although 'slavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear,' here, it is not clear that the ALJ applied the substance of the treating physician rule, as he was required to do.").

### B. Other Arguments

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary the Court declines to reach these issues. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13-CV-06844 (LGS)(DF), 2015 U.S. Dist. LEXIS 58246, at *80 (S.D.N.Y. Feb. 10, 2015) (The court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted, 2015 U.S. Dost. LEXIS 58203 (S.D.N.Y. May 4, 2015).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: February 7, 2020  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge